IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DANA MICHAEL STAFFORD;                          Civ. No. 1:24-cv-01612-AA
HEATHER LEIGH STAFFORD,

                Plaintiffs,                    **OPINION & ORDER**

      v.

ANDREW TAFFET; BRUCE ROSE;
STACEY LAMARRE; CARRINGTON
MORTGAGE SERVICES, LLC;
CARRINGTON HOLDING COMPANY
LLC,

                Defendants.

_____

AIKEN, District Judge.

      This matter comes before the Court on Defendants' Motion to Dismiss.  ECF No. 16.  The Court concludes that this motion is appropriate for resolution without oral argument.  For the reasons set forth below, the motion is GRANTED and the Amended Complaint is DISMISSED.

<b>LEGAL STANDARD</b>

      To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id*.

## BACKGROUND

Self-represented Plaintiffs Dana Michael Stafford and Heather Leigh Stafford do not clearly allege the origin of their dispute. However, the Court will take judicial notice of the documents attached to the Declaration of Gregory Mina, ECF No. 17, under the doctrine of incorporation by reference.[1]

On April 20, 2020, Plaintiffs entered into a Deed of Trust with lender Ark-La-Tex Financial Services, LLC dba Eleven Mortgage to secure a promissory note in the amount of $361,000 for the purchase real property at 1083 Aspen St. in Medford, Oregon. Mina Decl. Ex. A, at 1-2. Defendant Carrington Mortgage Services, LLC

---

[1] Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself if the plaintiff "refers extensively to the documents or the documents form the basis of the plaintiff's claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (internal quotation marks and citation omitted). Here, the Mina Declaration offers the Deed of Trust between Plaintiffs and lender Ark-La-Tex Financial Services, LLC d/b/a Eleven Mortgage (Exhibit A); a copy of a Monthly Mortgage Statement from Defendant Carrington Mortgage Services, LLC (Exhibit B); and copies of correspondence between Michael Bivens and Defendant Carrington Mortgage Services, LLC on March 11, 2024 (Exhibit C). These documents are an essential part of the basis of Plaintiffs' claims and so are proper subjects for judicial notice.

("Carrington") is the servicer of the mortgage loan and on December 12, 2023, Carrington notified Plaintiffs in a monthly mortgage statement that the loan was one month past due.  Mina Decl. Ex. B.

Plaintiffs assert that Defendants must present them with the original note and that Defendants lack the power to enforce the debt.  Much of Plaintiffs' Amended Complaint is given over to legal conclusions.

Plaintiffs submitted a communication to Defendants through their "notary" Michael Bivens "seeking validation of the alleged mortgage debt and an accurate accounting of payments" on January 16, 2024.[2]  Am. Compl. 3, 6; Ex. 1, at 2-3.  ECF No. 15.  This communication sought: "A certified copy of the original promissory note for the alleged debt,"; "Accounting documentation showing the origin and balance of the alleged debt,"; "Confirmation of compliance with Generally Accepted Accounting Principles (GAAP),"; "Identification of the original source of funds used to establish the alleged loan,"; and "Verification under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., to ensure the debt's validity."  Am. Compl. Ex. 1, at 3.  Plaintiffs allege that Defendants did not respond to their communication.  Am. Compl. 3.

On March 11, 2024, Carrington sent a letter to Michael Bivens acknowledging receipt of communications from Bivens on January 29, 2024, seeking information on Plaintiffs' loan.  Mina Decl. Ex. C, at 1.  Carrington responded that Bivens was not

---

[2] The Court is troubled by the allegations indicating that a "notary" was apparently acting in some sort of representative capacity for Plaintiffs.  Michael Bivens is not listed as a member of the Oregon State Bar and at least some of his alleged actions in this case appear to veer perilously close to the unlicensed practice of law.

an authorized representative on the account and that, until he was authorized by the borrowers, Carrington could not disclose any information to him. *Id.* Carrington provided directions on how to secure authorization for Bivens to act as a representative of the borrowers. *Id.*

Plaintiffs sent a series of other documents to Defendants, including a "Notice of Intent—Fee Schedule" purporting to unilaterally impose fees on Defendants for such acts as the use of Plaintiffs' names or for Plaintiffs' appearance in court. Am. Compl. Ex. 2, at 17-21, 23-27.

On June 13, 2024, Carrington sent Plaintiffs a "Notice of Intent to Foreclose" stating that Plaintiffs had not made a payment on the mortgage since before December 1, 2023, and were $15,542.48 in arrears on the loan. Am. Compl. Ex. 4, at 1. By October 17, 2024, Plaintiffs' arrearage had grown to $27,045.67. Am. Compl. Ex. 4, at 5.

On September 13, 2024, Michael Bivens, identified by Plaintiffs as a notary, sent a cease-and-desist letter to Defendants on behalf of Plaintiffs announcing that the debt was invalid. Am. Compl. Ex. 2, at 33-34.

Plaintiffs allege that Michael Bivens issued a "Certificate of Dishonor" on November 3, 2024, "documenting Defendants' failure to respond and affirming Plaintiffs' claims." Am. Compl. 4; Ex 3, at 2-4.

Defendants "continued to issue billing statements and sent an intent to foreclose notice[.]" Am. Compl. 4. Plaintiffs allege that, by not responding to Plaintiffs' communications demanding validation of the debt, Defendants have

"effectively admitted the debt's invalidity. Nullifying any obligation on Plaintiffs to repay principal, interest, or related costs." *Id.* 7.

## DISCUSSION

Plaintiffs bring claims for violation of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Oregon Unfair Trade Practices Act ("UTPA"), as well as claims for Negligent Infliction of Emotional Distress ("NIED") and Intentional Infliction of Emotional Distress ("IIED"). They seek a "Certified Judgment for Nullification of Alleged Mortgage Loan." Am. Compl. 7. Plaintiffs also seek a declaratory judgment stating that Defendants lack the ability to enforce the loan and a permanent injunction against collection efforts. *Id.* at 8-9. Plaintiffs also assert that Defendants are equitably estopped from enforcing the debt "due to their repeated failure to provide necessary validation, violating principles of good faith and fair dealing." *Id.* at 12. Defendants have moved to dismiss the Amended Complaint.

### I.    TILA

TILA requires creditors to provide disclosure of credit terms to borrowers before they are bound so that a consumer can more readily compare credit terms and avoid the uninformed use of credit. *See* 15 U.S.C. § 1601(a). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). "TILA generally governs the disclosures a lender must provide during the loan origination

process." *Davis v. Murray Mortgage*, Case No. EDCV 19-00732-CJC(RAOx), 2019 WL 13077328, at *2 (C.D. Cal. June 10, 2019).

Defendants assert that Plaintiffs' TILA claim is untimely. TILA has two statutes of limitations: (1) a three-year statute of limitations for recission, and (2) a one-year statute of limitations for money damages. 15 U.S.C. §§ 1640(e). A TILA violation occurs—and the statute of limitations generally begins to run—when the loan documents are signed. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

Here, the loan originated in 2020, but Plaintiffs did not bring their claim until 2024, well beyond the limitations period for a TILA claim. Plaintiffs' claims are untimely on their face and so subject to dismissal. Plaintiffs argue that equitable tolling should apply to their TILA claim but allege no facts that would support the application of any tolling.

In addition, Carrington is the servicer of the mortgage loan and damages under TILA are only available against creditors. *See Taylor v. Wells Fargo Bank, NA*, Case No. CV 10-4473-JEM, 2010 WL 11552929, at *4 (C.D. Cal. Sept. 15, 2010) (holding that 15 U.S.C. § 1640(a) "expressly limits liability to creditors" and that servicers cannot be treated as assignees for purposes of TILA liability unless the servicer is or was the owner of the obligation under 15 U.S.C. § 1641(f)(1)). Plaintiffs do not allege that Defendants are their creditors, nor do they allege facts that would support treating the servicer as the assignee. Plaintiffs' TILA claim is DISMISSED.

## II.    RESPA

RESPA prohibits a mortgage loan servicer from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

RESPA requires that a loan servicer respond to a Qualified Written Request ("QWR") within sixty days of receiving the request from the borrower. 12 U.S.C. § 2605(e). A QWR is a request that (1) includes sufficient information to allow the servicer to identify the name and account of the borrower, and (2) states the reasons for the borrower's belief the account is in error with sufficient detail or provides such detail about other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

"In order to be protected under RESPA, the plaintiff's correspondence must, among other qualifications, 'relate to the servicing of the loan.'" *Reutov v. PHH Mortgage Servicing*, Case No. 3:23-cv-01172-JR, 2024 WL 3402880, at *3 (D. Or. June 5, 2024) (quoting *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV-11-156-HZ, 2011 WL 3476648, at *11 (D. Or. Aug. 8, 2011)); *see also Vettrus v. Bank of Am., NA*, 6:12-cv-00074-AA, 2012 WL 2905167, at *8 (D. Or. July 13, 2012) ("[T]o be liable under RESPA for the failure to respond to a QWR, the plaintiff must, as a threshold requirement, demonstrate that the request for information contained a statement of error regarding the loan service or otherwise sought information relating to the receipt of any scheduled period payments."). "A request that is a 'general notice of inquiry' or merely seeks documentation without reflecting a belief by the borrower

that his account is in error does not qualify as a QWR." *Vettrus*, 2012 WL 2905167, at *8.

The requirement that QWRs relate to servicing of the loan "ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (emphasis in original).

> RESPA defines the term "servicing" to encompass only receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts and making the payments of principal and interest and such other payments. "Servicing," so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors . . . In summary, we hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under [12 U.S.C.] § 2605(e).

*Medrano*, 704 F.3d at 666-67 (internal quotation marks and citations omitted, alterations normalized).

Consistent with that guidance, the court in *Reutov* determined that communications seeking "validation of the debt" were not QWRs. *Reutov*, 2024 WL 3402880, at *2-3 ("Instead, these correspondences reflect that plaintiff sought proof of ownership of the loan in form of the 'ORIGINAL WET INK SIGNATURE PROMISSORY NOTE' due to its securitization," and "[a]s such, plaintiff's letters were not attempts to gain information about the servicing of the existing loan . . . but were rather efforts to rescind the loan and recoup periodic payments due to defendants' purported fraud."). Here, the communications sent by Plaintiffs, via

Michael Bivens, to Carrington are notably similar to those in *Reutov*. Plaintiffs were seeking proof of ownership of the loan and validity of the debt, rather than seeking information about the servicing of the loan. Their communication was not a QWR and so cannot give rise to a RESPA claim. In addition, it was not sent by Plaintiffs themselves but by Michael Bevins. Carrington's response was not a refusal to provide information, but a request that Bevins establish his authority to act on behalf of Plaintiffs.

In addition, Plaintiffs have not established that they suffered any actual damages. "Failure to comply with RESPA does not create fraud or tort liability." *Subramaniam v. Beal*, 3:12-cv-01681-MO, 2013 WL 5462339, at *7 (D. Or. Sept. 27, 2013). Instead, the borrower can recover actual damages to the borrower and additional damages (up to $2,000) that the court finds necessary to remedy a pattern of noncompliance by the defendant. 12 U.S.C. § 2605(f). "Courts have interpreted the requirement of actual damages to mean pecuniary damages" but "[c]onclusory allegations of damages will not suffice." *Subramaniam*, 2013 WL 5462339, at *7. To recover for damages under RESPA, a plaintiff must show that the damages proximately resulted from the RESPA violation itself—here the alleged failure to promptly respond to a QWR—as opposed to other actions by the defendants. *Id.*

Because Plaintiffs' communication to Carrington was not a QWR, their RESPA claim fails. Because the allegation of additional facts cannot transform their communication into a QWR, the RESPA claim is dismissed without leave to amend.

### III.    FDCPA

Defendants argue that Plaintiffs' FDCPA claim should be dismissed because it fails to allege that Defendants are "debt collectors" or that Plaintiffs are "consumers" within the meaning of the FDCPA.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a violation of the FDCPA, a claimant must show (1) he or she was a consumer; (2) who was the object of a collection activity arising from a consumer debt; (3) the defendant is a "debt collector" as defined by the FDCPA; and (4) engaged in an act or omission prohibited by the FDCPA. *Miranda v. Law Office of D. Scott. Carruthers*, No. 1:10-cv-01487 OMW SMS, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).

"[M]ortgage servicers and assignees of a creditor 'are not debt collectors' within the meaning of the FDCPA" where "'they obtained the right to collect on a loan before it was in default.'" *Reutov*, 2024 WL 3402880, at *3 (quoting *Lettenmaier*, 2011 WL 3476648, at *13-14); *see also Nelson v. Fay Servicing, LLC*, No. 3:22-cv-01911-HZ, 2023 WL 6122685, at *11-12 (D. Or. Sept. 15, 2023) (dismissing FDCPA claims against the loan servicer with prejudice based on more recent Oregon and Ninth Circuit precedent).

Here, Plaintiffs have not alleged that they are consumers or that Defendants are debt collectors within the meaning of the FDCPA. As such, the FDCPA claim fails. Based on the submitted exhibits, it seems likely that Carrington obtained the right to collect on the loan as the servicer before the loan was in default and so would not qualify as a debt collector in any event. Nevertheless, Plaintiffs will be permitted to attempt to amend their FDCPA claim.

## IV.   UTPA

The UTPA provides a private right of action for any person who suffers an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act, or practice declared unlawful" by the UTPA. ORS 646.638(1). To make out a UTPA claim, a plaintiff must prove (1) a violation of ORS 646.608(1); (2) causation; (3) damages; and (4) willfulness by the defendant. *Colquitt v. Mfrs. and Traders Trust Co.*, 144 F. Supp.3d 1219, 1231 (D. Or. 2015).

"Pleading an ascertainable loss of money or property is an essential element of a private UTPA claim." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp.3d 971, 978 (D. Or. 2016); *see also Paul v. Providence Health System-Oregon*, 237 Or. App. 584, 603-04 (2010) (explaining that a threatened loss is not an ascertainable loss under Oregon UTPA); *Gomez v. Bank of America, NA*, No. 3:11-CV-01253-SI, 2012 WL 929790, at *9 (D. Or. Mar 19, 2012) (finding that the fact that the plaintiffs were in default on their loan did not, in itself, constitute ascertainable loss because they had not lost any money or property).

Here, Plaintiffs have failed to allege the loss of an ascertainable amount of money as a result of Defendants' actions. As a result, Plaintiffs' UTPA claim fails.

## V.     NIED and IIED

IIED and NIED are distinct but related claims under Oregon law.

### A. Intentional Infliction of Emotional Distress

Under Oregon law, a plaintiff asserting a claim for IIED must prove: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (en banc) (internal quotation marks and citation omitted). To survive a motion to dismiss, it is sufficient that a plaintiff alleges either that the defendant "desired to inflict severe emotional distress [or] that the defendant knew that such distress was substantially certain to result from a volitional act." *Babick v. Or. Arena Corp.*, 333 Or. 401, 412 (2002). For the defendant's acts to constitute an extraordinary transgression, the conduct alleged must be "outrageous in the extreme." *Watte v. Maeyens*, 112 Or. App. 234, 239 (1992). "Conduct that is merely rude, boorish, tyrannical, churlish and mean does not satisfy that standard, nor do insults, harsh or intimidating words, or rude behavior ordinarily result in liability even when intended to cause distress." *Id.* (internal quotation marks and citation omitted).

Here, the allegations, supporting exhibits, and judicially noticed materials concerning Defendants indicate that Defendants (1) sought payment of Plaintiffs'

mortgage as the servicer; (2) did not respond to a communication from Bivens seeking information about the origination of the loan because he was not an authorized representative of Plaintiffs on the loan; and (3) they continued to pursue repayment of the loan despite Plaintiffs' unilateral declaration that that loan was invalid. This does not amount to conduct that is "outrageous in the extreme." Plaintiffs' IIED claim fails. The Court concludes that this defect cannot be remedied by the allegation of additional facts and so dismissal is without further leave to amend.

### B. Negligent Infliction of Emotional Distress

Under Oregon's physical impact rule, "a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022). Oregon courts have not "define[d] the minimum amount of bodily harm necessary to constitute a physical impact," but "[a]t a minimum, the physical impact rule requires an act or omission that results in some perceptible physical effect on a plaintiff." *Chouinard v. Health Ventures*, 179 Or. App. 507, 514-15 (2002). If the plaintiff suffers no physical impact, a claim NIED can proceed when (1) the defendant violated a "legally protected interest" independent of the negligent conduct, *I.K.*, 317 Or. App. at 254;[3] (2) the defendant is subject to a "standard of care that includes a specific duty to be aware of

---

[3] A "legally protected interest" is a "an independent basis of liability separate from the general duty to avoid a foreseeable risk of harm" and "not just any legally protected interest will suffice to support a claim for negligent infliction of emotional distress." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022) (internal quotation marks and citations omitted). The interest "must be of sufficient importance as a matter of public policy to merit protection from emotional impact." *Id.* at 254-55 (internal quotation marks and citation omitted).

and guard against particular adverse psychological reactions," typically in the medical profession, *Curtis v. MRI Imaging Servs. II*, 327 Or. 9, 14-15 (1998); or (3) the plaintiff is a bystander who contemporaneously witnessed the negligent death of or injury to a family member, *Philibert v. Kluser*, 360 Or. 698, 712-16 (2016). Of note, a claim for NIED cannot be based on intentional acts because a claim for NIED "requires that the plaintiff suffered because of the defendant's *negligence*" and cannot be sustained by the allegation of an intentional act. *Winslow v. Oregon Health & Science Univ.*, Case No. 3:24-cv-2105-SI, 2025 WL 1434992, at *7 (D. Or. May 19, 2025).

Here, Plaintiffs have failed to allege a physical impact or any facts that would support a claim for NIED in the absence of a physical impact. In addition, the claims for NIED arise from the same basic facts that underlie Plaintiffs' claim for IIED and, as set forth in *Winslow*, a claim for NIED cannot be based on *intentional* acts. Plaintiffs' claim for NIED is dismissed. Because Plaintiffs cannot cure the defects by the allegation of additional facts, dismissal is without leave to amend.

## VI.    Remaining Claims

Plaintiffs' other claims—for injunctive relief, declaratory judgment, and for equitable estoppel—are contingent on Plaintiffs' substantive claims. For the reasons set forth above, each of Plaintiffs' substantive claims is defective.

## VII.    Leave to Amend

Defendants urge that the Court dismiss the case with prejudice, while Plaintiffs request leave to amend. Plaintiffs have already amended their complaint

once and courts have "particularly broad" discretion to deny leave to amend where the plaintiff has already had one or more opportunities to amend a complaint. *Chodos v. West Publ'g*, 292 F.3d 992, 1003 (9th Cir. 2002). However, the Court is also cognizant of the fact that Plaintiffs are self-represented. Self-represented parties are generally given greater latitude when Courts consider whether to allow amendment.

As discussed above, Plaintiffs' claims are defective. Some of these claims—for RESPA violation, for IIED, and for NIED—cannot be remedied by the allegation of additional facts. Those claims will be dismissed with prejudice and may not be realleged. The remaining claims might, conceivably, be salvaged by the allegation of additional facts. Dismissal of the remaining claims is with leave to amend. Plaintiffs shall have thirty (30) days from the date of this Order in which to file their second amended complaint.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss, ECF No. 16, is GRANTED and the Amended Complaint is DISMISSED. The claims for violation of RESPA, for Intentional Infliction of Emotional Distress, and for Negligent Infliction of Emotional Distress, are DISMISSED without further leave to amend. Dismissal of the remaining claims is with leave to amend and Plaintiffs shall have thirty (30) days from the date of this Order in which to file a second amended complaint.

It is so ORDERED and DATED this ___23rd___ day of June 2025.

 /s/Ann Aiken
ANN AIKEN
United States District Judge