**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON – MEDFORD DIVISION**

**DANA MICHAEL STAFFORD and**

**HEATHER LEIGH STAFFORD,**

Pro Se Plaintiffs,

**v.**

**CARRINGTON MORTGAGE SERVICES, LLC;**

**CARRINGTON HOLDING COMPANY, LLC;**

**ANDREW TAFFET;**

**BRUCE ROSE;**

**STACEY LAMARRE,**

Defendants.

**(Case No. 1:24-cv-01612-AA)**

**Plaintiffs' Opposition to Defendants' Motion to Dismiss**

## I.   INTRODUCTION AND SUMMARY OF RIGHTS

This case is about basic transparency. Plaintiffs are natural persons, Oregon residents, and homeowners. They asked a straightforward question—who owns the loan?—and exercised their statutory right to request validation within thirty days. Instead of answering, Defendants offered attorney declarations, a mailing log, and Rule 7.1 labels. None of these materials establish ownership, standing, or compliance under Rule 12. None come from a competent custodian. All are litigation tactics, not proof.

If Defendants had lawful standing and authority, this case could be resolved in a single page: by producing (i) a valid § 1641(g) owner notice, (ii) a custodian declaration authenticating the

1

endorsed promissory note, and (iii) proof of mailing. Their refusal to do so confirms the controversy is real and ongoing.

Plaintiffs invoke rights guaranteed to natural persons under federal and state law:

- the **FDCPA**, protecting the right to dispute and demand validation;

- the **TILA**, requiring disclosure of the owner and lawful authority;

- the **FCRA**, safeguarding against unauthorized access and misleading reporting;

- the **UTPA**, prohibiting deceptive or unconscionable trade practices;

- the **Due Process Clause**, ensuring fairness before property or credit can be taken; and

- the **Seventh Amendment**, preserving trial by jury on contested facts.

Defendants attempt to smear Plaintiffs as "fringe" or "sovereign citizen" litigants. This is false. Plaintiffs followed the exact procedures Congress and the Oregon Legislature established. They sent certified validation requests. They disputed timely. They acted in good faith, repeatedly stating they will pay any valid balance in full once standing is proved. The harms suffered are not abstract: measurable credit-score declines, denials of credit, higher interest rates, reduced limits, escrow/tax risks, and out-of-pocket costs.

At this Rule 12 stage, Plaintiffs' allegations must be accepted as true. The facts needed to determine ownership and authority are uniquely within Defendants' files. Dismissal now would reward nondisclosure and penalize ordinary consumers for using the very protections Congress provided. Plaintiffs respectfully request that the Court deny the motion to dismiss, permit discovery on all issues of ownership, authority, and responsibility, and preserve all rights for amendment and appellate review to ensure the full vindication of the rights of natural persons under law.

## II.    DEFINITIONS AND PARTIES CLARIFICATION

**Use of "Defendants."** Unless otherwise specified, "Defendants" means Carrington Mortgage Services, LLC ("CMS"); Carrington Holding Company, LLC ("CHC"); and the individual defendants (Andrew Taffet, Bruce Rose, and Stacey Lamarre).

## III.    RELEVANT FACTS (ACCEPTED AS TRUE AT RULE 12)

A.  **Initial contact + dispute.** Defendants first contacted Plaintiffs and issued a statement showing a past-due balance in or around January 2024. Within 30 days (on January 16, 2024), Plaintiffs sent certified, written disputes/validation requests to CMS, then-CEO Bruce Rose, and current CEO Andrew Taffet. USPS tracking reflects delivery.

B.  **Refusal.** On March 11, 2024, Stacey Lamarre (Customer Advocate) responded on the CEO's behalf. The letter refused to identify the owner or provide validation, instead conditioning any response on extra "authorization" not required by the FDCPA or TILA.

C.  **Ongoing conduct.** Despite the timely dispute, Defendants continued billing and furnishing a tradeline. No § 1641(g) owner notice has been produced. No owner identification was provided upon written request under § 1641(f)(2).

D.  **Concrete harms.** Plaintiffs suffered credit-score drops, denials, higher rates, reduced limits, and escrow/tax risks—injuries that are concrete, particularized, and redressable.

E.  **Corporate structure opacity.** Defendants' Rule 7.1 disclosures confirm a tight corporate chain (CMS ↔ CHC and affiliated Carrington entities), yet no one identifies who owns the note or furnishes a proper owner notice.

## IV.    LEGAL STANDARDS

A.  **Rule 12(b)(6) / Rule 8.** The Court accepts well-pleaded facts as true and draws reasonable inferences for Plaintiffs. A claim survives if it states a plausible entitlement to relief. *Bell Atl. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Rule 8 requires only a short and plain statement; it does not require granular identification of internal corporate actors. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

B.  **Pro se leniency.** Pro se pleadings are construed liberally and with the benefit of any doubt; leave to amend should be granted unless futile. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

C.  **Record limits at Rule 12 / Rule 12(d).** The Court may consider the complaint, its exhibits, incorporation-by-reference materials, and judicially noticeable matters—not new factual assertions in attorney declarations or mailing logs. *Khoja v. Orexigen*, 899 F.3d 988, 998–1003 (9th Cir. 2018); *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). If the Court considers extra-pleading materials, it must convert and allow discovery. Fed. R. Civ. P. 12(d).

D.  **Affirmative defenses at Rule 12.** Dismissal based on an affirmative defense (e.g., timeliness) is proper only when the bar is clear on the face of the complaint. *Von Saher v. Norton Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010).

E.  **Leave to amend.** Leave should be "freely given" absent futility, undue delay, bad faith, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital v. Aspeon*, 316 F.3d 1048, 1051–52 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

4

## V.    JURISDICTION, VENUE, AND ARTICLE III STANDING

A.  **Personal jurisdiction & venue.** Plaintiffs reside in Oregon; the property is in Oregon; all challenged conduct (billing, credit reporting, and refusal to validate) was purposefully directed at Oregon. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–78 (1985). If the Court desires more, Plaintiffs request limited jurisdictional discovery.

B.  **Article III standing.** Plaintiffs allege concrete, particularized harms (score drops, denials, higher rates, reduced limits, escrow/tax risks) fairly traceable to Defendants and redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

## VI.    DEFENDANTS AND BASIS FOR INCLUSION

These facts, alleged to the fullest extent possible pre-discovery, support a reasonable inference of responsibility and justify the inclusion of each defendant at this stage. Plaintiffs, as natural persons, are entitled under Rule 8(d) to plead in the alternative and to preserve claims against all defendants until discovery clarifies whether each acted directly, ratified the conduct, or negligently failed to prevent it. This is not impermissible group pleading, but a necessary and lawful approach where the allocation of responsibility is uniquely within defendants' control and cannot be ascertained without access to internal records and communications. Plaintiffs expressly request targeted discovery on the roles, communications, and decision-making processes relevant to debt validation, ownership, and authority to collect and report, and are prepared to promptly dismiss any defendant as to whom discovery reveals no actionable involvement. This approach is consistent with procedural fairness, the liberal construction of pro se pleadings, and the right of natural persons to meaningful access to the courts.

Plaintiffs' allegations are grounded in the actual correspondence and conduct of the parties, supported by reasonable inference and the public record, and are specifically tied to Oregon property and residents:

- **Carrington Mortgage Services, LLC:** Sent billing statements and collection communications to Plaintiffs' Oregon address, reported tradelines affecting Plaintiffs' Oregon credit files, received written validation requests from Oregon residents, and continued collection and credit reporting activities directed at Oregon property. These acts constitute purposeful availment of the Oregon forum and are central to the claims asserted.

- **Carrington Holding Company, LLC:** As the sole member and possible note owner of CMS, controls the servicing and collection activities directed at Oregon property. The refusal to identify the current owner or produce a § 1641(g) notice, as confirmed by the corporate disclosure statements, directly implicates CHC in the challenged conduct and necessitates its inclusion as a defendant until discovery clarifies ownership and authority.

- **Bruce Rose (former CEO):** Received written validation requests during his tenure as CEO, and by virtue of his executive role, plausibly exercised oversight or ratification authority over the debt validation and collection practices affecting Plaintiffs' Oregon property. His receipt of executive-level notice and failure to correct or respond to the statutory requests support a reasonable inference of purposeful direction of conduct toward Oregon.

- **Andrew Taffet (current CEO):** Received written validation requests as CEO, and is responsible for compliance and policy decisions regarding the servicing and collection of

the Oregon mortgage. His role in the ongoing refusal to validate or identify the creditor further supports personal jurisdiction and liability.

- **Stacey Lamarre (Customer Advocate):** Directly responded to the validation request on behalf of the CEO, refusing to provide validation while collection and credit reporting continued. This constitutes direct participation in the statutory violations alleged, with communications sent to Oregon residents regarding Oregon property.

Executive-level notice, correspondence, and decision-making regarding Oregon property and residents are sufficient contacts for personal jurisdiction under federal and Oregon law. The corporate disclosure statements filed by Defendants reveal a complex and opaque ownership structure, further justifying the need for discovery to clarify the allocation of responsibility and authority.

Plaintiffs expressly request targeted discovery to clarify the roles, communications, and forum-related contacts of each defendant, and are prepared to amend or dismiss as appropriate based on the results of discovery. This approach is consistent with procedural fairness, the liberal construction of pro se pleadings, and the right of natural persons to meaningful access to the courts.

> **Pleading in the alternative.** Where responsibility is uniquely within Defendants' control, inclusion of related defendants is proper at this stage. *Graves v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 4442420, at *6 (C.D. Cal. Sept. 26, 2011). If discovery shows no actionable involvement for any individual, Plaintiffs will promptly dismiss as appropriate.

## VII.   Evidentiary Limits and Defects in Defendants' Materials

**A. Rule 12(d) Limits.** The Court may consider the complaint, its exhibits, and judicially noticeable matters—but not new factual material introduced by declaration. See *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998–1003 (9th Cir. 2018). If extra-record materials are considered, the motion must be converted to summary judgment and discovery permitted.

**B. Defects in Defendants' Materials**

1. **Attorney Declaration:** Gregory Mina's declaration is not competent evidence of debt ownership, validation, or notice. He is outside counsel, not a custodian, and lacks personal knowledge. It offers no substantive facts.

2. **Mailing Log / "Hello Letter":** Disputed factual issues. A RESPA servicing-transfer letter is not a TILA § 1641(g) owner notice.

3. **Rule 7.1 Disclosures:** Ministerial filings for conflicts, not evidence of ownership or validation.

4. **Party Admissions:** Defendants admit in briefing that Plaintiffs disputed timely and CMS refused validation. Such statements may be treated as admissions. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988).

## VIII.   CLAIMS AND GROUNDS FOR DENIAL

***Incorporation.*** *Plaintiffs incorporate all prior paragraphs into each count.*

8

**A. Count I — FDCPA (15 U.S.C. §§ 1692g(a)(2), 1692g(b), 1692e, 1692e(8), 1692f)**

**Defense:** "Servicer, not a debt collector; statements aren't collection; the dispute letter was improper."

**Response:** Plaintiffs plausibly allege multiple violations.

1. **Debt-collector status.** Post-default collection on debts owed to others fits § 1692a(6). *McAdory v. M.N.S.*, 952 F.3d 1089, 1094 (9th Cir. 2020).

2. **Initial disclosure/validation.** The first communication had to identify "the name of the creditor to whom the debt is owed." § 1692g(a)(2). A timely written dispute triggers § 1692g(b)'s cease-collection rule; Reg F bars further collection until validation is sent and requires current-creditor disclosure. 12 C.F.R. § 1006.34(c)(3). *Camacho v. Bridgeport*, 430 F.3d 1078, 1081–82 (9th Cir. 2005); *Clark v. Capital Credit*, 460 F.3d 1162, 1172 (9th Cir. 2006).

3. **Collection communications.** Billing statements and lien-threat letters constitute collection when they demand payment or threaten consequences. *Mashiri v. Epsten*, 845 F.3d 984, 990–92 (9th Cir. 2017). *Obduskey*'s narrow carve-out for entities engaged only in nonjudicial foreclosure does not apply where, as here, Defendants pursued payment and furnished tradelines. *Dowers v. Nationstar*, 852 F.3d 964, 970–71 (9th Cir. 2017).

4. **Misleading and unfair practices.** Reporting an unverified balance and implying lawful authority to collect states claims under §§ 1692e, 1692e(2)(A), 1692f. *Tourgeman v. Collins*, 755 F.3d 1109, 1119 (9th Cir. 2014); *Gonzales v. Arrow*, 660 F.3d 1055, 1061–64 (9th Cir. 2011).

5. **Furnishing after dispute.** Failing to communicate that a debt is disputed violates § 1692e(8).

6. **Harm.** Score drops, denials, higher rates, reduced limits, out-of-pocket costs, and escrow/tax risks are compensable.

## B. Count II — TILA (15 U.S.C. § 1641(g); § 1641(f)(2))

**Defense:** "We sent a servicing transfer letter; no damages."

**Response:** Two independent theories; both plausible.

1. **Owner-notice theory (§ 1641(g)).** If Defendants (or a Carrington affiliate) are the owner/assignee, they owed a written owner-transfer notice within 30 days identifying name, address, and phone. 12 C.F.R. § 1026.39(d). A RESPA "hello letter" naming a servicer is not a TILA owner notice. *Galindo v. Financial Freedom*, 2020 WL 3619048, at *5 (C.D. Cal. 2020); *Tucker v. HSBC*, 2014 WL 431965, at *5 (C.D. Cal. 2014).

2. **Servicer-identification theory (§ 1641(f)(2)).** If CMS is only the servicer, it had to identify the owner upon written request; it refused. *Taylor v. Wells Fargo*, 2010 WL 11552929, at *4 (C.D. Cal. 2010).

3. **Damages and timeliness.** Statutory damages are available to natural persons for § 1641(g) violations without proof of detrimental reliance; Plaintiffs also allege actual harm. See *In re Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002); *Tucker*, 2014 WL 431965, at *5. The claim accrued when the notice should have been mailed but was not, and when Defendants refused to identify the owner (January–March 2024). Filed within a year. 15 U.S.C. § 1640(e).

## C. Count III — FCRA (15 U.S.C. §§ 1681b, 1681s-2(b))

**Defense:** "No CRA dispute alleged; permissible purpose exists."

**Response:** Plaintiffs plead two viable tracks.

1. **No permissible purpose (§ 1681b).** A user must have an enumerated purpose at the time of access; Plaintiffs plausibly allege none existed because the relationship/ownership was unverified and files were frozen. *Pintos v. Pac. Creditors*, 605 F.3d 665, 674–76 (9th Cir. 2010); *Nayab v. Capital One*, 942 F.3d 480, 490–92 (9th Cir. 2019).

2. **Furnisher reinvestigation (§ 1681s-2(b)).** After CRA notice, a furnisher must reasonably investigate and correct/delete inaccurate or misleading information; reporting without noting the dispute can be misleading. *Gorman v. Wolpoff*, 584 F.3d 1147, 1154–60 (9th Cir. 2009).

3. **Harm & remedies.** Concrete injury alleged; willful (or alternatively negligent) violations pleaded. *Safeco v. Burr*, 551 U.S. 47, 57–60 (2007).

## D. Count IV — Oregon UTPA (ORS 646.608, 646.638)

**Defense:** "UTPA doesn't apply to servicing; no ascertainable loss."

**Response:** Plaintiffs plausibly state a claim.

1. **Trade or commerce / consumer.** Plaintiffs are consumers; CMS engaged in trade/commerce through servicing/collection and related reporting. ORS 646.605(6), (8); *Campbell v. MERS*, 2012 WL 3901716, at *5 (D. Or.).

2. **Deceptive/unconscionable practices.** Misstating authority, refusing to identify the owner, reporting inflated/unsupported amounts, and collecting/furnishing after a timely

11

dispute are actionable. The UTPA is remedial and liberally construed. *Pearson v. Philip Morris*, 358 Or 88, 123 (2015); *Egbukichi v. Wells Fargo*, 184 F. Supp. 3d 971, 978 (D. Or. 2016); *Paul v. Providence*, 237 Or. App. 584, 603–04 (2010).

3. **Ascertainable loss.** Score declines, denials, higher rates, reduced limits, out-of-pocket costs, and escrow/tax exposures suffice and can be itemized.

## E. Declaratory Relief

**Defense:** "Advisory and derivative."

**Response:** The controversy is live and relief useful now.

1. Defendants bill and furnish while refusing to identify the owner or produce authority; Plaintiffs deny any enforceable relationship. A declaration on ownership/authority will clarify present conduct and prevent further harm. *MedImmune, Inc. v. Genentech*, 549 U.S. 118, 127 (2007); *Dizol*, 133 F.3d 1220, 1223–25 (9th Cir. 1998).

2. Money damages alone will not identify who may lawfully collect and furnish going forward. A narrow declaration does not duplicate damages; it guides conduct now.

**Requested declaratory ruling (scope).** Determine (i) whether a valid, enforceable obligation exists between these parties; (ii) who the current owner/assignee is; (iii) whether Defendants are owner/assignee or merely servicer obligated to identify the owner; and (iv) whether Defendants may continue collection/furnishing absent proof of ownership/assignment consistent with federal and state law.

## VIII.  EVIDENTIARY DEFECTS IN DEFENSE MATERIALS

A. **Attorney declaration (Mina) — Inadmissible.** The Mina declaration is not competent evidence of ownership, mailing, or statutory compliance. It rests on counsel's file review—not personal knowledge—and cannot authenticate business records. Fed. R. Evid. 602, 803(6), 901; *Khoja*, 899 F.3d at 999–1003.

B. **Mailing log / "hello letter" — Disputed facts.** These are offered for their truth (mailing, ownership, compliance) and cannot be considered at Rule 12. A RESPA "hello letter" is not a TILA § 1641(g) owner notice. 12 C.F.R. § 1026.39(d).

C. **Incorporation by reference — Inapplicable.** The doctrine is narrow and does not permit resolving factual disputes or accepting contested documents for their truth. *Khoja*, 899 F.3d at 999–1003; *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

D. **Rule 7.1 disclosures — Not evidence.** Ministerial filings for conflicts and jurisdiction; they do not prove loan ownership, § 1641(g) notice, or validation.

E. **Party admission.** Defendants' brief acknowledges receipt of Plaintiffs' January 16, 2024 dispute and refusal to validate. "Statements of fact in a brief may be considered admissions." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988).

## IX.  REQUESTED RULINGS

A. **Deny the motion to dismiss** in full.

B. **Disregard extra-record materials** (the Mina attorney declaration; mailing log; "hello letter"; Rule 7.1 disclosures) at Rule 12. Alternatively, convert under Rule 12(d) and allow targeted discovery limited to: ownership; assignment; servicing start date/default

status; content/mailing/receipt of any § 1641(g) owner notice; validation records; and credit reporting.

C. **Require competent proof** if compliance is still asserted: a custodian declaration from the loan owner authenticating and attaching (a) the actual § 1641(g) owner notice with proof of mailing/receipt, and (b) the authentic, endorsed promissory note (allonges, chain of assignment).

D. **Reject affirmative-defense dismissals** (e.g., timeliness) unless the bar is clear on the face of the complaint.

E. **Grant leave to amend (in the alternative)** to add limited particulars (CRA confirmations, certified-mail receipts, first past-due statement showing post-default servicing, itemized denials/rate increases/out-of-pocket costs).

F. **Declaratory relief (procedural step).** If the Court declines to reach the merits now, set a short schedule for limited discovery on ownership/authority and order Defendants, within 14 days, to identify the current owner/assignee (including any Carrington affiliate) and to produce custodian-supported business records as described above.

## X.    CONCLUSION

This case is about basic transparency. Plaintiffs asked who owns the loan, requested validation within 30 days, and sought accurate credit reporting. Plaintiffs have played along with this complex legal system, but have been asking the same lawful question for nearly two years: Who owns the loan? How is it justice that Defendants still refuse to answer? Instead, they offered attorney declarations, a mailing log, and Rule 7.1 labels; none of which establish ownership, standing, or compliance at Rule 12. None of these declarations contain substantive facts from a

14

competent witness; they are litigation tactics meant to obscure, not evidence meant to resolve. If Defendants actually possess standing and authority, the controversy could be resolved in a single page by producing a valid owner notice or the authentic, endorsed promissory note with a custodian declaration. Their choice to play games instead confirms why these claims must proceed.

The Second Amended Complaint alleges exactly what Congress and Oregon law protect against: post-default collection without validation, no TILA owner notice or owner identification on request, unauthorized credit access and inaccurate furnishing, and deceptive practices causing real financial loss. Those allegations, tied to dates and exhibits, are more than plausible.

Beyond statutory violations, this case implicates constitutional protections. The Due Process Clause bars deprivation of property without proof of lawful authority. Article III requires a real controversy between adverse parties, and Plaintiffs' concrete injuries: credit score declines, denials, higher rates, escrow risks, and out-of-pocket costs; all satisfy standing. The Seventh Amendment guarantees that contested facts, such as ownership of the note and mailing of notices, are for a jury to resolve, not for attorneys to assert in declarations at Rule 12. These constitutional principles underscore why dismissal now would be improper.

Plaintiffs are pro se Oregon homeowners acting promptly and in good faith. They seek no windfall, only the identity of the lawful creditor and proof of authority before paying. Dismissing now would reward opacity and penalize consumers for using the protections Congress and the Oregon Legislature enacted. This case is not about gamesmanship—it is about proof. No homeowner should be forced to pay a stranger without it.

Plaintiffs remain ready to resolve this matter as soon as lawful authority is shown.

15

Respectfully submitted,

Dated: September 3, 2025

Dana Michael Stafford, Pro Se

1083 Aspen Street Medford, OR 97501

971-940-0163 - danamstafford@gmail.com

Heather Leigh Stafford, Pro Se

1083 Aspen Street Medford, OR 97501

971-940-0282 - heatherlstafford@gmail.com

# CERTIFICATE OF SERVICE

I certify that on September 3, 2025, I served the foregoing **Plaintiffs' Opposition to**

**Defendants' Motion to Dismiss** on all counsel of record via the Court's CM/ECF system, which

effects service on registered users. I served copies by email as well, addressed as follows:


Greg Mina | Holland & Knight
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue, Suite 1800 | Portland, Oregon 97204
Phone 503.517.2920 | Fax 503.241.8014
greg.mina@hklaw.com | www.hklaw.com


Dana Michael Stafford, Pro Se

Heather Leigh Stafford, Pro Se

17