IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| DANA MICHAEL STAFFORD; HEATHER LEIGH STAFFORD, | Civ. No. 1:24-cv-01612-AA |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| ANDREW TAFFET; BRUCE ROSE; STACEY LAMARRE; CARRINGTON MORTGAGE SERVICES, LLC; CARRINGTON HOLDING COMPANY LLC, | |
| Defendants. | |

AIKEN, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint, ECF No. 33, and on Defendants' Motion to Excuse Defense Counsel's Conferral Obligations, ECF No. 29. The Court concludes that these motions are appropriate for resolution without oral argument. For the reasons set forth below, the Motion to Dismiss is GRANTED.

### LEGAL STANDARD

To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id.*

## BACKGROUND

The substantive facts of this case are set forward at length in the Court's previous Opinion & Order, ECF No. 25, and will not be reproduced here except as necessary.

## DISCUSSION

Plaintiffs bring claims for violation of the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Unfair Trade Practices Act ("UTPA"), and claims for declaratory and injunctive relief. Plaintiffs "reserve" but do not plead a series of additional claims.

### I.     False Case Citations

Defendants have pointed out that Plaintiffs have cited to several cases in their Response brief which do not appear to exist:

- "*Campbell v. MERS*, 2012 WL 3901716, at * 5 (D. Or.)," Pl. Resp. at 11;

- *"Tucker v. HSBC*, 2014 WL 431965, at *5 (C.D. Cal. 2014)," Pl. Resp. at 10; and

- *"Galindo v. Financial Freedom*, 2020 WL 3619048, at *5 (C.D. Cal. 2020)," Pl. Resp. at 10.

The Court has reviewed the challenged citations and confirmed that these are not extant cases.

The false citations are not confined to Plaintiffs' Response. For example, Plaintiffs also cite to "*Galindo v. Fin. Freedom Acquisitions LLC*¸ 2023 WL 3619048, at * 5 (C.D. Cal. Apr. 20, 2020)" on pages 9 and 19 of the SAC. As noted, no such case exists, and the citation provided is for union pension litigation in the Southern District of New York.

Plaintiffs cite to "*Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-CV-01416, 2012 WL 3901716 (D. Or. Sept. 7, 2012)" on page 26 of the SAC. No such case exists.[1]

Plaintiffs cite to "*Tucker v. HSBC Bank USA*, 2014 WL 431965, at *5 (C.D. Cal. Feb. 3, 2014)*" on page 19 of the SAC. No such case exists.

Plaintiffs cite to "*McGinnis v. MERS*, No. 6:11-cv-06273-TC (D. Or. Aug. 17, 2011)" on pages 28 and 30 of the SAC. No such case exists.

---

[1] There is a case called *Campbell v. Mortg. Electronic Registration System, Inc.*, N. 03-11-00429-CV, 2012 WL 1839357 (Tex. App. May 18, 2012), but it was a Texas state court decision that does not, as Plaintiffs allege, SAC at 26, concern the Oregon UTPA. And the Oregon District Court case number provided by Plaintiffs, 3:11-cv-01416, connects to an entirely different case, *Giuliano v. Anchorage Advisors, LLC et al.*, which concerned unjust enrichment and intentional interference with contracts.

Plaintiffs cite to "*Schweitzer v. FHLMC*, No. 3:13-cv-0181, 2013 WL 4279629 (D. Or. Aug. 29, 2013)" on pages 11 and 34 of the SAC. Once again, no such case exists and the case number Plaintiffs provide is for a Social Security appeal.

Presenting false citations is a grave matter and suggests an intention to mislead or deceive the Court. The most charitable interpretation is that Plaintiffs have relied on AI to complete their pleadings and briefing and have presented the resulting "hallucinated" citations to the Court without verifying their authenticity. The use of such a defective expedient makes Plaintiffs' repeated complaints concerning their hours spent on legal research ring especially hollow.

The presentation of false citations, including AI "hallucinations," has been found to be sanctionable conduct for attorneys and pro se parties. *See United States v. Hayes*, 763 F. Supp.3d 1054, 1071 (E.D. Cal. 2025) (collecting cases). Fortunately for Plaintiffs, Defendants have represented to the Court that they do not intend to seek sanctions for Plaintiffs' conduct at this time and so the Court will leave the matter there for now.

## II.    Shotgun Pleadings

Defendants move to dismiss the claims against Defendants Bruce Rose, Andrew Taffet, Stacey Lamarre, and Carrington Holding Company, LLC on the grounds that the Complaint does not allege any specific allegations against those Defendants beyond impermissible group allegations naming either "Defendants" or "Carrington."

A pleading in which a "complainant asserts claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is type of "shotgun pleading." *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp.3d 921, 943 (D. Or. 2020) (internal quotation marks and citation omitted). Such pleadings fall short of Federal Rule of Civil Procedure 8's "short and plain statement" requirement and "permitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8." *Gibson v. City of Portland*, 165 F.4th 1265, 1289-90 (9th Cir. 2026). "[D]istrict courts do not have to accept such shotgun pleadings" and may dismiss them for failure to comply with Rule 8. *Id.*

The SAC contains no specific allegations against Bruce Rose, Andrew Taffet, Stacey Lamarre, or Carrington Holding Company, LLC and impermissibly lumps them all together as "Defendants." This falls short of the requirements of Rule 8 and the Court will GRANT Defendants' motion to dismiss the claims against Bruce Rose, Andrew Taffet, Stacey Lamarre, and Carrington Holding Company, LLC. Plaintiffs have had multiple opportunities to plead their claims and have already had the benefit of the Court's guidance on repleading their claims. Further leave to amend would be futile.

Because the Court has dismissed the claims against Bruce Rose, Andrew Taffet, Stacey Lamarre, and Carrington Holding Company, LLC on other grounds, the Court need not reach Defendants' arguments concerning personal jurisdiction.

### III.    Claims against Carrington Mortgage Services LLC

The remaining claims are alleged against Defendant Carrington Mortgage Services, LLC ("Carrington").

### A. FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a violation of the FDCPA, a claimant must show (1) he or she was a consumer; (2) who was the object of a collection activity arising from a consumer debt; (3) the defendant is a "debt collector" as defined by the FDCPA; and (4) engaged in an act or omission prohibited by the FDCPA. *Miranda v. Law Office of D. Scott. Carruthers*, No. 1:10-cv-01487 OMW SMS, 2011 WL 2037556, at \*4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).

The SAC alleges that Carrington violated the FDCPA when it sent Plaintiffs a notice of default and "threatened foreclosure." SAC at 14; *see also* SAC Ex. G1, ECF No. 26-8 (Notice of Intent to Foreclose sent to Plaintiffs by Carrington). However, the FDCPA imposes liability only when an entity is trying to collect a debt and, "[f]or purposes of the FDCPA, the word 'debt' is synonymous with 'money.'" *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017). "[F]oreclosing on a trust deed is an entirely different path" than "collecting funds from a debtor." *Gresham v. Premier Mortg. Resources, LLC*, No. 3:17-cv-01581-PK, 2018 WL 4945215,

at *6 (D. Or. May 18, 2018) (internal quotation marks and citation omitted). "[B]ecause the money collected from a trustee's sale is not money owed by a consumer, it isn't 'debt' as defined by the FDCPA." *Naumov v. Shellpoint Mortg. Servicing*, Case No. 3:23-cv-01120-JR, 2024 WL 3973181, at *4 (D. Or. July 16, 2024) (internal quotation marks and citation omitted). As a result "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Vien Phuong Thi Ho*, 858 F.3d at 572. Sending notices of default and taking the initial steps to initiate a foreclosure are not debt collection activities within the meaning of the FDCPA.

Plaintiffs also allege that Carrington violated the FDCPA by reporting derogatory tradelines to credit bureaus. SAC at 14. However, reporting a mortgage account to the credit reporting bureaus is not a debt collection activity for purposes of the FDCPA. *See Drake v. Enhanced Recovery Co., LLC*, Case No. 6:15-cv-01899, 2018 WL 1402586, at *2-3 (D. Or. Mar. 19, 2018) (holding that the reporting of a mortgage account to the credit bureaus was "not done in connection with the collection of the debt under the FDCPA" and finding no violation under the FDCPA). The reporting of the debt to the CRA was not a violation of the FDCPA.

The Court therefore GRANTS Defendants' motion to dismiss the FDCPA claim. The Court concludes that granting yet another opportunity to amend would be futile and so dismissal is without further leave to amend.

Page 7 –OPINION & ORDER

## B. TILA

Plaintiffs repeated allege that Carrington failed to identify itself as the new servicer of the loan as required under 15 U.S.C. § 1641(g) and this allegation forms of the basis of Plaintiffs' TILA claim.  SAC at 17-18.

The Court will take judicial notice of Exhibit A of the Mina Declaration, ECF No. 34, under the doctrine of incorporation by reference because the document in question, a "Hello Letter" from Carrington to Plaintiffs, is referred to extensively and forms the basis of Plaintiffs' TILA complaint.[2]

The "Hello Letter" was sent to Plaintiffs by Carrington on December 8, 2023, notifying Plaintiff that servicing of their mortgage had been transferred from Benchmark Mortgage to Carrington, effective December 4, 2023, and that all future mortgage payments should be sent to Carrington.   Mina Decl. Ex. A, at 1.  This is consistent with Exhibit I the SAC showing that Carrington sent a monthly mortgage statement to Plaintiffs on December 12, 2023.  ECF No. 26-13.  The existence of the "Hello Letter" demonstrates that Carrington complied with the requirements of the 15 U.S.C. § 1641(g).

Furthermore, the Ninth Circuit has held that "detrimental reliance is an element of a TILA claim for actual damages." *In re Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002); *see also Ghalehtak v. FNBN I, LLC¸* 692 Fed. App'x 931, 932 (9th Cir. 2017) (affirming dismissal of a TILA claim for actual damages "because plaintiffs

---

[2] Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself if the plaintiff "refers extensively to the documents or the documents form the basis of the plaintiff's claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (internal quotation marks and citation omitted).

failed to allege facts sufficient to show that they detrimentally relied on appellee's failure to provide notice of transfer of plaintiff's loan to appellee."). Here, Plaintiff's seek actual damages for credit injury, increased borrowing costs, and out-of-pocket expenses "pursuing this action," SAC 20, but Plaintiffs do not sufficiently allege detrimental reliance.

The Court will therefore GRANT Defendants' Motion to Dismiss Plaintiffs' TILA claim. The Court concludes that granting yet another opportunity to amend would be futile and so dismissal is without leave to amend.

### C. FCRA

Plaintiff's FCRA claim alleges that Carrington (1) "[a]ccessed Plaintiffs' credit files in January 2024 and thereafter, despite the fact that Plaintiffs' credit files were under active freeze protection," without a permissible purpose; (2) furnished inaccurate information to the credit reporting agencies; and (3) failed to conduct a reasonable investigation or correct inaccurate information after receiving certified dispute notices from Plaintiffs. SAC 22-23.

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit." 15 U.S.C. § 1681(b). A consumer reporting agency ("CRA") is one that "regularly engages in whole or in part in the practice of assembling or evaluating

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

To ensure credit reports are accurate, the FCRA imposes some duties on the sources providing credit information to CRAs, called "furnishers" Among those duties are obligations triggered upon notice of a dispute—that is, when an entity who furnished information to a CRA receives notice from the CRA that the consumer disputes the information, at which point the furnisher is to conduct an investigation of the dispute; review all information provided by the CRA; report the results of the investigation to the CRA; and take certain corrective actions if the dispute is found to be meritorious. 15 U.S.C. § 1681s-2(b)(1).

"These duties arise, however, only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger the furnishers' duties under subsection (b)." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Here, Plaintiffs allege that they disputed the derogatory tradeline with Carrington but do not allege that they disputed it with the CRA and, without a report of the dispute that originated with the CRA, Carrington's duties to conduct an investigation under § 1681-2(b)(1) were not triggered.

With respect to the issue of Carrington accessing Plaintiff's credit information, the FCRA provides that consumer reporting agencies may disclose a consumer's credit information to a third party for a "permissible purpose." 15 U.S.C. § 1681b. One such permissible purpose is the servicing of a debt. 15 U.S.C. § 1681b(3); *Chyba v. Green Tree Servicing, LLC*, CASE NO. 12-CV-2530-H (WMC), 2012 WL 12874929,

at *2 (S.D. Cal. Dec. 12, 2012) (dismissing an FCRA claim because a loan servicer had a permissible purpose to access credit information). As the servicer on the loan, Carrington had such a permissible purpose.

Although Plaintiffs complain that their credit information was under freeze protection, loan servicers such as Carrington are not subject to security freezes. 15 U.S.C. § 1681c-1(i)(4).

The Court concludes that Plaintiffs have failed to state an FCRA claim against Defendants and so the motion to dismiss is GRANTED. The Court concludes that further leave to amend would be futile.

**D. UTPA**

The UTPA provides a private right of action for any person who suffers an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act, or practice declared unlawful" by the UTPA. ORS 646.638(1). To make out a UTPA claim, a plaintiff must prove (1) a violation of ORS 646.608(1); (2) causation; (3) damages; and (4) willfulness by the defendant. *Colquitt v. Mfrs. and Traders Trust Co.*, 144 F. Supp.3d 1219, 1231 (D. Or. 2015).

"Pleading an ascertainable loss of money or property is an essential element of a private UTPA claim." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp.3d 971, 978 (D. Or. 2016); *see also Paul v. Providence Health System-Oregon*, 237 Or. App. 584, 603-04 (2010) (explaining that a threatened loss is not an ascertainable loss under Oregon UTPA); *Gomez v. Bank of America, NA*, No. 3:11-CV-01253-SI, 2012 WL

929790, at *9 (D. Or. Mar 19, 2012) (finding that the fact that the plaintiffs were in default on their loan did not, in itself, constitute ascertainable loss because they had not lost any money or property).

The Court dismissed the previous incarnation of Plaintiffs' UTPA claim for a failure to allege an ascertainable amount of money. The SAC suffers the same defect. It alleges damage to Plaintiffs' credit, denial of applications for refinancing, increased borrowing costs, emotional distress, inability to "confirm that the property taxes and insurance premiums were being properly paid," and "the necessity of incurring expenses to protect their rights." SAC at 29. Plaintiffs have once again alleged "threatened" losses, which are not ascertainable losses. *Paul*, 237 Or. App. at 603. The closest Plaintiffs come to alleging an "ascertainable" loss is the allegation that they have incurred expenses to "protect their rights" but, as the Oregon Court of Appeals explained in *Paul* when it rejected a similar claim, "money spent to prevent an ascertainable loss under the UTPA is not itself an 'ascertainable loss of money or property, real or personal, as a result of' the violation of the statute." *Id.* at 604.

Because Plaintiffs have again failed to allege an ascertainable loss, their UTPA claim fails and must be dismissed. The Court concludes that it would be futile to permit another round of amendments.

### E. Declaratory and Injunctive Relief

Plaintiffs seek a declaration that Carrington does not possess a right to enforce the mortgage note and injunctive relief forbidding them from doing so. As with the prior complaint, these claims are forms of relief that are contingent on the success of

Plaintiffs' substantive claims. For the reasons set forth above, those substantive claims are once again defective, compelling the dismissal of Plaintiffs' claims for injunctive and declaratory relief.

### F.  Other "Claims"

The SAC purports to "reserve the right to amend the Complaint" to assert additional claims, including fraud, negligent misrepresentation, conversion, wrongful foreclosure, defamation, breach of fiduciary duty, and abuse of process. SAC 41-42.

As a preliminary matter, Plaintiffs have the right to amend their complaint as a matter of course only once. Fed. R. Civ. P. 15(a)(1). Plaintiffs have already exercised this right. ECF No. 15. Plaintiffs may only amend their complaint with either Defendants' written consent or leave of the Court. Fed. R. Civ. P. 15(a)(2). Plaintiffs' "reservation of rights" is meaningless.

To the extent that this section of the SAC was meant to assert these claims, it falls woefully short and does not present any factual basis to support the claims and must be dismissed.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss, ECF No. 33, is GRANTED and the Second Amended Complaint, ECF No. 26, is DISMISSED. The Court has concluded that it would be futile to permit further leave to amend and so dismissal is with prejudice. Final judgment shall be entered accordingly. The entry of final judgment will MOOT Defendants' Motion to Excuse Defense Counsel's Conferral Obligations. ECF No. 29.

It is so ORDERED and DATED this ____23rd____ day of March 2026.

 /s/Ann Aiken
ANN AIKEN
United States District Judge